1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

T-MOBILE USA, INC.,

Plaintiff,

v.

ANITA WALTS, *et al.*,

Defendants.

Case No.  C06-0187L

ORDER DENYING
MOTION TO DISMISS

## I.  INTRODUCTION

This matter comes before the Court on a motion filed by defendants Linco Contractors, Inc., Ismael Espudo, and Romelia Espudo (collectively, "defendants") to dismiss for lack of personal jurisdiction, improper venue, *forum non conveniens*, or alternatively, to transfer the case to Texas where they reside.  (Dkt. #40).  Plaintiff T-Mobile USA, Inc. ("T-Mobile") argues that this Court has jurisdiction and is the proper venue because defendants targeted T-Mobile, whose principal place of business is in Bellevue, Washington, and conspired with one of T-Mobile's former employees to defraud T-Mobile out of over $600,000.

For the reasons set forth below, the Court denies the motion.

ORDER DENYING
MOTION TO DISMISS - 1

## II.  DISCUSSION

**A.    Background Facts.**

Defendant Anita Walts ("Walts") worked for T-Mobile as a Senior Manager in the Retail Real Estate & Facilities Group.  In that role, she was responsible for overseeing the lease and construction of T-Mobile retail stores in many states and was authorized to hire contractors and approve the payment of construction invoices.  Since April 2003, T-Mobile has contracted with defendant Linco Contractors, Ltd. ("Linco") to serve as general contractor for more than 40 retail construction projects throughout the United States.  Linco is owned by defendants Ismael and Romelia Espudo.  T-Mobile alleges that between September 2003 and May 2005, defendants paid more than $600,000 in bribes to Walts in exchange for T-Mobile contracts and caused T-Mobile to pay additional amounts beyond those authorized by the construction contracts.  Defendants concede that they made the payments to Walts, but argue that Walts, with T-Mobile's knowledge, forced them to make the payments or risk losing their contracts with T-Mobile.

T-Mobile asserts claims against defendants for violations of the Criminal Profiteering Act, RCW 9A.82 *et seq.*; violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c); conversion; intentional misrepresentation; unjust enrichment and restitution; and for constructive trust over the wrongfully obtained money and property.  On March 31, 2006, Walts informed the Court that she had initiated Chapter 11 bankruptcy proceedings; the case against her in this Court was automatically stayed.  T-Mobile moved the Bankruptcy Court for the Western District of Texas for relief from the stay; that motion was denied.

**B.    Personal Jurisdiction.**

Defendants contend that this Court lacks personal jurisdiction over them and

ORDER DENYING
MOTION TO DISMISS - 2

1   therefore this action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).  For a

2   forum state to have personal jurisdiction over an out-of-state defendant, that defendant

3   must "have certain minimum contacts with the forum state, such that the maintenance of

4   the suit does not offend 'traditional notions of fair play and substantial justice.'"

5   International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v.

6   Meyer, 311 U.S. 457, 463 (1940)).

7          A district court applies the law of the state in which it is located to determine the

8   defendant's amenability to a lawsuit.  Peterson v. Kennedy, 771 F.2d 1244, 1262 n.12

9   (9th Cir. 1985).  To establish personal jurisdiction, T-Mobile must demonstrate that

10  Washington's long-arm statute confers personal jurisdiction and that the exercise of that

11  jurisdiction meets the constitutional requirements of due process.  Rio Props., Inc. v. Rio

12  Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).  Washington's long-arm statute

13  provides for personal jurisdiction over non-residents who conduct business or commit

14  torts within the state.  RCW 4.28.185(1)(a)-(b).  That statute "authorizes courts to

15  exercise jurisdiction over nonresident defendants to the extent permitted by the due

16  process clause of the United States Constitution."  MBM Fisheries, Inc. v. Bollinger

17  Mach. Shop and Shipyard, Inc., 60 Wn. App. 414, 423 (1991).

18         T-Mobile concedes that the Court lacks general jurisdiction over defendants.  The

19  Court may nevertheless exercise "specific" personal jurisdiction depending upon "the

20  nature and quality of the defendant's contacts in relation to the cause of action."  Data

21  Disc, Inc. v.  Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977).

22         The Ninth Circuit utilizes a three-part test for determining whether due process

23  allows for the exercise of specific jurisdiction: "(1) the nonresident defendant must have

24  purposefully availed himself of the privilege of conducting activities in the forum by

25

26  ORDER DENYING
    MOTION TO DISMISS - 3

1   some affirmative act or conduct; (2) plaintiff's claim must arise out of or result from the

2   defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable."

3   Roth v. Garcia Marquez, 942 F.2d 617, 620-21 (9th Cir. 1991) (emphasis removed).

4        **1.**      **Purposeful Availment.**

5        The purposeful availment inquiry requires an evaluation of whether the

6   "defendant's conduct and connection with the forum State are such that he should

7   reasonably anticipate being haled into court there." Core-Vent Corp. v. Nobel Indus. AB,

8   11 F.3d 1482, 1485 (1993).  This element may be met if "the defendant has taken

9   deliberate action within the forum state or if he has created continuing obligations to

10  forum residents. . . .  It is not required that a defendant be physically present within, or

11  have physical contact with, the forum, provided that his efforts are purposefully directed

12  toward forum residents."  Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995) (internal

13  citations omitted).

14       The purposeful availment inquiry is evaluated under the "effects test" of Calder v.

15  Jones, 465 U.S. 783 (1984).  "To meet the effects test, the defendant must have (1)

16  committed an intentional act, which was (2) expressly aimed at the forum state, and (3)

17  caused harm, the brunt of which is likely to be suffered in the forum state."  Bancroft &

18  Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000).  Ninth Circuit

19  courts apply the effects test to intentional torts and claims that are "akin" to intentional

20  torts, and apply the traditional purposeful availment inquiry to contract claims and claims

21  akin to contract claims.  See Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir.

22  1995) ("we apply different purposeful availment tests to contract and tort cases").

23  Defendants concede that they committed intentional acts.  Also, if defendants committed

24  the acts alleged, they caused T-Mobile harm in Washington.

25

26  ORDER DENYING
    MOTION TO DISMISS - 4

1    The "express aiming" requirement "is satisfied when the defendant is alleged to
2  have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be
3  a resident of the forum state." Bancroft & Masters, 223 F.3d at 1087. In this case,
4  defendants allegedly targeted T-Mobile by engaging in a bribery and extortion scheme
5  that was designed to and did extort hundreds of thousands of dollars from T-Mobile.
6  Defendants concede that they knew that T-Mobile was a Washington resident. T-Mobile
7  has also alleged that defendants knew that their inflated invoices would be processed and
8  paid in Washington. Defendants sent some of the invoices themselves directly to T-
9  Mobile. Defendants argue that Walts was the one who submitted the relevant, inflated
10  invoices, and they are not responsible for her contacts with Washington. However,
11  defendants allegedly conspired with Walts and caused her to send the invoices on their
12  behalf. Furthermore, regardless of who sent the invoices, defendants targeted T-Mobile
13  knowing the result of the scheme would be felt in Washington. See Calder, 465 U.S. at
14  789 (finding that a newspaper editor and reporter expressly aimed their defamatory story
15  against a California resident even though their employer, not them, caused the newspaper
16  to be distributed in California; noting that "petitioners are primary participants in an
17  alleged wrongdoing intentionally directed at a California resident, and jurisdiction over
18  them is proper on that basis"). Accordingly, defendants have purposefully availed
19  themselves of this jurisdiction.

20    **2.    Forum-Related Activities.**

21    The second element of the specific jurisdiction test requires that the plaintiff's
22  claim arise out of or result from the defendant's forum-related activities. Garcia
23  Marquez, 942 F.2d at 620-21. This element is evaluated in terms of "but for" causation.
24  Bancroft & Masters, 223 F.3d at 1088. In this case, T-Mobile would not have incurred

25

26  ORDER DENYING
     MOTION TO DISMISS - 5

1  damages but for the extortion schemed aimed at it in Washington, and but for receiving

2  and paying the inflated and fraudulent invoices in Washington.  T-Mobile's claims arise

3  out of defendants' forum-related activities.

4         **3.**    **Reasonableness.**

5         Court "presume that an otherwise valid exercise of specific jurisdiction is

6  reasonable." Ballard, 65 F.3d at 1500 (explaining that to avoid jurisdiction, the plaintiff

7  must "'present a *compelling* case that the presence of some other considerations would

8  render jurisdiction unreasonable'") (quoting Burger King Corp. v. Rudzewicz, 471 U.S.

9  462, 477 (1985)) (emphasis in Ballard).  Courts consider seven factors when determining

10 whether the exercise of jurisdiction comports with traditional notions of fair play and

11 substantial justice and is therefore reasonable: "(1) the extent of a defendant's purposeful

12 interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of

13 conflict with the sovereignty of the defendant's state; (4) the forum state's interest in

14 adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6)

15 the importance of the forum to the plaintiff's interest in convenient and effective relief;

16 and (7) the existence of an alternative forum." RIO Props., Inc., 284 F.3d at 1021.  The

17 defendant bears the burden of demonstrating that exercising specific jurisdiction would

18 be unreasonable.  Bancroft & Masters, 223 F.3d at 1088 (citing Burger King Corp., 471

19 U.S. at 476-77).

20        In evaluating the first reasonableness factor, a court should consider "the extent to

21 which the defendant, by its alleged activities, purposefully interjected itself into the

22 forum." Callaway Golf Corp. v. Royal Canadian Golf Ass'n, 125 F. Supp. 2d 1195, 1205

23 (C.D. Cal. 2000).  "The 'smaller the element of purposeful interjection, the less is

24 jurisdiction to be anticipated and the less reasonable its exercise.'" Id. (quoting Insurance

25

26 ORDER DENYING
   MOTION TO DISMISS - 6

1   Co. of N. Am. v. Marina Salina Cruz, 649 F.2d 1266, 1271 (9th Cir. 1981)).  In this case,

2   although defendants had no physical contact with the forum, they purposefully interjected

3   themselves into the forum through their targeted extortion scheme.  The Court therefore

4   finds that this factor weighs in favor of the exercise of specific personal jurisdiction.

5         Defendants argue that they will face a significant burden if required to litigate this

6   matter in this forum.  They argue that T-Mobile is better able to absorb the cost of

7   litigating in a distant forum.  This argument is not well taken in light of the allegations of

8   extortion.  Furthermore, Linco serves as a general contractor on projects across the

9   United States, from Florida to California, undermining its argument that it lacks the

10   resources to travel outside of its home state.  Finally, mere inconvenience is insufficient

11   to defeat personal jurisdiction.  See, e.g., Ballard, 65 F.3d at 1501 ("unless the

12   inconvenience is so great as to constitute a deprivation of due process, it will not

13   overcome clear justifications for the exercise of jurisdiction") (internal citation and

14   quotation omitted).  This factor weighs only slightly in favor of defendants.

15         Defendants argue that litigation in this forum will conflict with Texas' sovereignty

16   because T-Mobile seeks a constructive trust over defendants' property located in Texas.

17   The property itself is not the subject of the lawsuit, and defendants do not argue that this

18   Court lacks authority to grant the constructive trust.  Rather, they argue that the Texas

19   court has jurisdiction based on the location of the property, but that does not undermine

20   the fact that this Court also has jurisdiction over defendants based on their contacts with

21   this forum.  Moreover, they have not provided any authority to show that requesting a

22   constructive trust over property in another state weighs against a finding of personal

23   jurisdiction.  Cf. Republic of the Phillippines v. Marcos, 862 F.2d 1355, 1364 (9th Cir.

24   1988) (affirming California court's entry of preliminary injunction, including a

25

26   ORDER DENYING
    MOTION TO DISMISS - 7

1  constructive trust, over property in Hawaii).  Although a state has an interest in the

2  disposition of real property within its borders, there is no allegation at this point that any

3  of the ill-gotten gains were used to finance real property.  Finally, Texas' interests in the

4  litigation may be preserved by the choice of law rules or by the potential necessity of

5  using its procedures to enforce any judgment T-Mobile might obtain against Texas

6  property.  This factor therefore weighs only slightly against a finding of reasonableness.

7        Washington has a strong interest in ensuring that its residents have a forum to

8  obtain redress for tortious conduct.  In addition to maintaining its principal place of

9  business here, T-Mobile also employees over 2000 Washington residents.  This factor

10  weighs heavily in favor of a finding of reasonableness.

11        Each party argues that its home state is the more efficient forum for judicial

12  resolution.  Defendants note that they have a lawsuit pending in Texas, and it would be

13  efficient to litigate both cases there.  Although it would be more efficient to litigate both

14  cases in the same district, it is not clear that the district is Texas.[1]  T-Mobile has shown

15  that its interest in convenient and effective relief is served by litigating this case in

16  Washington because most of its witnesses, records, and decision-makers are located here.

17  See, e.g., Declaration of Breena Roos at ¶ 9 (explaining that six of T-Mobile's nine

18  potential witnesses are located in Washington; none is in Texas).  Because defendants

19  submitted a list of potential witnesses for the first time with its reply brief, the Court did

20  not consider the list.  These factors weigh in favor of jurisdiction.

21        The Court also considers the existence of an alternate forum, which is Texas.

22  However, that factor is irrelevant because Washington is a reasonable forum.  See, e.g.,

23

24      [1] Although T-Mobile argues that the Texas court should transfer its case to this

25  district pursuant to the first to file rule, that issue is not properly before the Court.

26  ORDER DENYING
    MOTION TO DISMISS - 8

1  Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1202 (9th Cir. 1988) ("Whether another

2  reasonable forum exists becomes an issue only when the forum state is shown to be

3  unreasonable") (internal quotations and citation omitted).

4          On balance, the Court finds that defendants have not overcome the presumption of

5  reasonableness of the assertion of personal jurisdiction.  The Court therefore finds that

6  dismissal of T-Mobile's claims pursuant to Fed. R. Civ. P. 12(b)(2) is not warranted.

7  **C.      Venue.**

8          Defendants argue that dismissal is warranted pursuant to Fed. R. Civ. P. 12(b)(3)

9  because venue is improper under 28 U.S.C. § 1391.  Because jurisdiction is based on

10 diversity of the parties and the existence of a federal question, subsection (b) of the

11 statute applies.  That section provides, "A civil action wherein jurisdiction is not founded

12 solely on diversity of citizenship may, except as otherwise provided by law, be brought

13 only in . . . (2) a judicial district in which a substantial part of the events or omissions

14 giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  "Once venue is challenged,

15 the burden is on the plaintiff to show that venue is proper."  Koresko v. RealNetworks,

16 Inc., 291 F. Supp.2d 1157, 1160 (E.D. Cal. 2003).

17         The fact that defendants' contacts with Washington are sufficient to establish

18 personal jurisdiction does not necessarily mean that venue is proper here.  See, e.g., Gulf

19 Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005).  Rather, the Court focuses on

20 the location of the relevant events giving rise to the claim.  Venue could be proper in

21 Texas where defendants' interactions with Walts occurred and where the property is

22 located over which T-Mobile seeks a constructive trust.  However, venue can be proper in

23 more than one district.  See, e.g., id. at 356.

24         As set forth more fully above, defendants, either on their own or through Walts,

25

26 ORDER DENYING
   MOTION TO DISMISS - 9

1  submitted the relevant contracts and invoices to T-Mobile in this district for approval and

2  payment.  Furthermore, T-Mobile alleges that those actions are crucial to its claims that

3  defendants defrauded the company and submitted fraudulently inflated or fictitious

4  invoices, causing T-Mobile to pay for services never performed or inflated amounts.

5  Defendants' actions also resulted in injury to T-Mobile in this district.  See, e.g., Myers v.

6  Bennett Law Offices, 238 F.3d 1068, 1076 (9th Cir. 2001) (finding venue proper where at

7  least one of the "harms" plaintiff suffered was in the district); see also Cummings v.

8  Western Trial Lawyers Ass'n, 133 F. Supp. 2d 1144, 1150-51 (D. Ariz. 2001) (finding

9  venue proper in Arizona where defendant directed letters "which at least partially caused

10  plaintiff's defamation injury").  Accordingly, the Court finds that a substantial part of the

11  events giving rise to T-Mobile's claims occurred in this district, and venue is proper here.

12  **D.    *Forum Non Conveniens* and Transfer.**

13          Defendants also seek dismissal of this action based on the doctrine of *forum non*

14  *conveniens*.  That doctrine, however, is not applicable to this case because defendants

15  seek transfer to another federal district rather than to a foreign country.  See, e.g., Ravelo

16  Monegro v. Rosa, 211 F.3d 509, 513 (9th Cir. 2000).

17          "For the convenience of parties and witnesses, in the interest of justice, a district

18  court may transfer" a civil action to a venue where it might have been brought.  28 U.S.C.

19  § 1404(a).  As set forth more fully above regarding the reasonableness factors, defendants

20  have failed to carry their burden of showing that Texas would be more convenient for the

21  parties and witnesses or that a transfer would be in the interests of justice.

22                                    **III.  CONCLUSION**

23          For all of the foregoing reasons, the Court DENIES defendants' motion to dismiss.

24  (Dkt. #40).  Because this case is already stayed as to defendant Walts, the parties should

25

26  ORDER DENYING
    MOTION TO DISMISS - 10

1  inform the Court about whether they would like to proceed with this case or have it

2  stayed pending the conclusion of Walts' bankruptcy proceedings.  The parties may file a

3  stipulation, or if they cannot agree, either party may file a motion to stay the case within

4  thirty days of the date of this order.

5

6          DATED this 3rd day of July, 2006.

7

8

9                                          _Mark S Lasnik_

10                                         Robert S. Lasnik
                                           United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  ORDER DENYING
    MOTION TO DISMISS - 11